Huston *v.* Read.

ADELAIDE S. HUSTON and others

*v.*

ZACHARIAH READ, surviving executor &c.

1. Where an intention to give a perpetual annuity is apparent in the will, the legatee will be held entitled to the fund itself.

2. Testator gave an annuity of $400 to Samuel, and over to the legatees afterwards named in the will, to whom he had given annuities of $200, or to their "descendants and to no others;" also, an annuity of $1,000 to Joanna, besides a life-estate in his lands, with remainder to Mary for life or until marriage, then over, "to be equally divided between my three nieces, or their descendants, named below, hereby giving them a title in fee-simple to my real estate;" also, "to my

Huston *v.* Read.

three nieces, Martha, Mary (if unmarried) and Ellen, and to Eliza and Elizabeth, and to their heirs and descendants," an annuity of $200 each, or to the children of such as should die; and, if no children, to be equally divided among the survivors; also, the residue of the income, after the executors had retained enough to meet contingent losses, "to be distributed among my female annuitants before named." By a codicil, Sarah, the wife of a nephew, was given from the income of the residue an annuity the same as Martha and Ellen, if not needed to meet losses. Eliza and Elizabeth were the wives of two nephews. Testator died in 1856; Samuel, in 1859; Mary, in 1850, unmarried; Joanna, in 1860; Martha, in 1861, leaving two children; Ellen, in 1876, leaving three children; Elizabeth, in 1867, leaving several children; Eliza, in 1875, leaving one child; Sarah, in 1870, leaving children. The will was proved in the prerogative court, and the executors' first account filed there. Afterwards, two of the executors filed a bill in chancery against the third, for an account, and, he having died, his representatives were ordered to account and pay over testator's assets in their hands to the surviving executors, who afterwards filed an account in the orphans court.—*Held,*

(1) That Samuel's share goes to the representatives of Martha and Ellen.

(2) That Mary's share lapsed by her death in testator's life-time without "descendants."

(3) That the provision that the lands "be equally divided," makes Martha and Ellen tenants in common, and the lands descended accordingly.

(4) That the residue, in the absence of other testamentary directions, is to be divided equally among the children of Martha and Ellen.

(5) That the executors were not, by the suit in this court, prevented from settling their accounts afterwards in the orphans court; but such settlement does not conclude this court as to the validity of their payments to the several legatees.

Bill for construction of will &c.   On final hearing on pleadings and proofs.

*Mr. J. L. N. Stratton,* for complainants.

*Mr. C. E. Merritt,* for the children of Ellen Shreve.

*Mr. M. P. Grey,* for the children of Elizabeth and Eliza Eakin.

Huston *v.* Read.

*Mr. Barker Gummere,* for the children of Martha Read and Ellen Shreve.

The Chancellor.

James Eakin, late of Mount Holly, died in May, 1856, leaving a will which was proved the 20th of that month. The will contains the following provisions:

"To my brother Samuel H. Eakin, I will and bequeath an annuity of four hundred dollars during his natural life, to be paid him quarter-yearly by my executors hereinafter named, and, at his death, it is my will and desire that said annuity be paid in equal proportions, and at like periods, to such of my legatees hereinafter named, or to their descendants, as I have by this will bequeathed annuities of two hundred dollars, and to no others.

"3d.—To my sister Joanna Shiras, I will and bequeath an annuity of one thousand dollars, to be paid her quarter-yearly by my executors; and, further, I will and bequeath to my said sister Joanna a life-estate in my house and lot of ground in Mount Holly, with all the appurtenances and improvements thereunto belonging, together with all the furniture, plate, china, books, pictures, and all the other contents of said house, in which I have an interest; and, at the death of my said sister Joanna, all her claim to and interest in said bequests are to cease, and, in her place and stead, I substitute my niece Mary P. Shiras, giving and bequeathing to her, during her natural life, and while unmarried, my aforesaid house and lot of ground, together with the furniture, annuity, and all other benefits and advantages secured by this instrument of writing to my said sister Joanna Shiras. But, should my said niece Mary die or marry before the death of my said sister Joanna, then and in that case, at the death of the latter, it is my will and desire that all the property, both real and personal, together with the annuity hereby secured to my said sister Joanna, and conditionally to my said niece Mary, be equally divided between my three nieces, or their descendants, named below, hereby giving them a title in fee-simple to my real estate.

4th.—To my three nieces, Martha Read, wife of Dr. R. Z. Read; Mary P. Shiras, if married, as, by such act, she forfeits all provision heretofore made for her by this testament; and Ellen Shreve, wife of Alexander R. Shreve, and to Elizabeth Eakin, wife of Constant M. Eakin, and to Eliza Eakin, wife of Alphonso L. Eakin, and to their heirs and descendants, I will and bequeath an annuity to each of two hundred dollars, to be paid to them by my executors, quarter-yearly; or, in the event of the death of either, said annuity to be paid to the

guardian of the infant child or children of the deceased, for the sole and entire benefit of the said infant or infants; or, should either of the annuitants die without leaving a child, then the annuity intended for her infant or infants to be equally divided between those of the survivors.

"7th.—The residue of the income of my estate, after the payment of the legacies and annuities heretofore provided for, I desire may be retained by my executors to meet and make good any losses which may be sustained on the personal estate or capital that I may die possessed of, leaving it with them to determine how often, and at what time, should there be a surplus fund arising from interest and dividends, it may be distributed among my female annuitants before named; but I hereby strictly enjoin it on my executors to use every possible means to prevent the capital of my estate being impaired. Should it, however, unfortunately happen that losses to such an extent should occur as to render the annual receipts unequal to the payment of all the annuities provided for, it is my will that my sister Joanna shall suffer no loss thereby, if alive, but the deficiency is to be borne by the other annuitants, in equal proportions."

By a codicil (the first), dated February 1st, 1848, to the will, he made the following provisions:

" At the time of the execution of that will [the will just mentioned], my nephew James E. Shiras, was unmarried, and, in consequence, it was not deemed necessary to introduce his name by making any provision for him. He having subsequently, however, taken a wife, I am unwilling that she should be overlooked in the distribution of my estate, and I, therefore, enjoin it on my executors, that from the residue of the annual proceeds of the property left by me, after the payment of all legacies and annuities given and granted by my will above referred to, there be paid to Susan Shiras, the wife of my nephew James, half-yearly, for her sole and entire use, independent of her husband, a like annuity with that provided for, by my said will, my nieces Martha and Ellen, with the following condition, viz., that should not the annual income of my estate be sufficient to meet such annuity, then the aforesaid Susan Shiras is to receive such sum, or portion of it, as the excess of receipts, after the payment of all sums provided for by my will, will authorize, and no more."

By the will, the testator appointed Alphonso L. Eakin, Alexander R. Shreve, Zachariah R. Read and Abraham Brown, executors. The first three (Brown died in the lifetime of the testator) proved the will and codicil, and duly

assumed the execution thereof. Alphonso L. Eakin filed and settled a separate, intermediate account in the prerogative court where the will was proved, and his co-executors filed and settled a like account there. In 1862, Shreve and Read filed their bill in this court, as executors and trustees under the will, against their co-executor and co-trustee, Eakin, for an account of the estate in his hands. He filed a cross-bill against them for a like account. He having died, they filed a supplemental bill, in 1867, to bring in the administrators of his estate in his stead. They came in, and an account was taken, and they were ordered to deliver over the estate of James Eakin in their hands, to Shreve and Read, and did so accordingly. Subsequently, in 1870, the surviving executors filed and settled their final account. in the orphans court of Burlington county, by which it appeared that there was a balance of $52,322.47 of the estate in their hands.

Alexander R. Shreve, one of the executors, died intestate in 1870, and Ellen C. Shreve (now dead) and Alfred R. Shreve were appointed administrators of his estate. The testator's brother Samuel died in 1859. Mary P. Shiras died in 1850, in the testator's life-time. Joanna Shiras died in 1860. Martha Read died in 1861, leaving two children, the complainants. Ellen C. Shreve died in 1876, leaving three children. Elizabeth, wife of Constant M. Eakin, died in 1867, leaving several children. Eliza, wife of Alphonso L. Eakin, died in 1875. She left a child, a son, still living. Susan Shiras, mentioned in the codicil, of which part is above recited, died in 1870, leaving children.

The bill is filed for a construction of the will, and an account of the estate, and for payment in accordance with the directions of the court, after construing the will. The testator, by the will and codicils, in terms bequeaths only annuities, and makes no other express disposition of his personal estate, except that which belonged to his establishment, which he gives to his three nieces, subsequently named in the will, "or their descendants." His real estate

he gives to them in fee. It is evident, however, that he did not intend to die intestate of any part of his estate, but intended to dispose of it all by the will and codicil, and has done so. He carefully disposes of all the surplus of the income of his personal estate, by providing that it may be distributed among his female legatees. He terms them " annuitants."

In the first codicil, he gives as a reason for the gift he was about to make thereby, that he was unwilling that the legatee Susan Shiras should be "overlooked in the distribution of his estate," and then provides for an annuity for her, to be paid out of the income of his estate after the annuities and legacy given by the will. He terms the bequests of annuities, " distribution of his estate," and he makes no disposition of the capital, from which the annuities were to be derived, except in the gift of the annuities themselves. There is a residuary clause of the will, but in it he speaks only of the income of the fund, except to ·express his wish that the capital be kept unimpaired for the purposes of the will. The gift of the annuities in the first and third sections of the will, is to the legatees " or their descendants." In the fourth, it is to the legatees, " or their heirs and descendants." By the latter section it is provided that the annuities, in the event of the death of the legatees, shall go to their infant children, without limitation as to time of enjoyment.

The annuities given are perpetual. The rule is, that when the interest or produce of a legacy is given to, or in trust for, a legatee, or for the separate use of such legatee, without limitation as to continuance, the principal will be considered as bequeathed, also. *2 Roper on Leg. 1476; Craft* v. *Snook, 2 Beas. 121; Gulick* v. *Gulick, 10 C. E. Gr. 324; S. C. on appeal, 12 Id. 498.*

And where the intention to give a perpetual annuity is apparent in the will, the intention will prevail, and the legatee will be held to be entitled to the fund. *2 Roper on*

*Leg. 1482; Stoker* v. *Heron, 12 Cl. & Fin. 161; Clough* v. *Wynn, 2 Madd. 188; Phillips* v. *Chamberlaine, 4 Ves. 51; Parsons* v. *Parsons, L. R. (8 Eq.) 260.*

The words, " or their descendants," or, " their heirs and descendants," are merely words of substitution. *Jones* v. *Torin, 6 Sim. 55.*

A gift to A., " or to his heirs," or " to his representatives," is an absolute gift to A., on condition that he is alive at the death of the testator, but if he dies in the lifetime of the testator, the gift takes effect in favor of the other persons described as substitutes of the primary legatee. *Gittings* v. *McDermott, 2 Myl. & K. 73; 2 Wms. on Ex'rs, 956 et seq.; Brokaw* v. *Hudson, 12 C. E. Gr. 135.*

It is to be remarked that in the present case the testator gave the annuity to his brother expressly, for life; he limited the annuity to his sister Joanna for her life, and so, too, the substitution of his niece Mary P. Shiras was for her life, so long as she remained unmarried; but he set no limit to the gift of those annuities over. The gift over is to the legatees or " their descendants," or " heirs and descendants." And he provides that, in case of the death of the legatees, the annuities go to their children, without any limitation as to time. He clearly devotes his estate, except his homestead and personal property, constituting his establishment, to the payment of the legacies and annuities alone.

In *Yates* v. *Madden, 16 Sim. 613,* a testator gave his son one clear annuity of £100, for and during his natural life, and should he die, leaving a child him surviving, he continued the same annuity for such child's use and benefit, to be paid to his or her mother. He gave two annuities of £100 to two other persons, and bequeathed his residuary estate to his executors, in trust, amongst other things, to pay the several legacies and annuities before given by him. It was held that the annuity given to his son's child was a perpetual one.

In *Potter* v. *Baker, 15 Beav. 489*, a testator directed that his property be invested in the funds for the best advantage of those he should afterwards name, and he bequeathed £50 a year to A., for life, and, after his decease, the £50 a year should go, half to B. and the other half to C. It was held that the annuity was perpetual, and that B. and C. were entitled to such a sum in the funds as would produce £50 a year.

By the first section of the will, the testator gives an annuity to his brother, for life, and then to the legatees " or their descendants," to whom he gave annuities of $200 each, and, to confine it to them unmistakably, he adds, " and no others." The brother, the primary legatee, is dead. The fund goes to the personal representatives of the deceased secondary legatees, because those legatees all survived the testator, and their right to the fund vested in them absolutely on his death, at the same time as the title of the primary legatee. The gift to them was not of a life-estate with remainder to their children. If the words, " or their descendants," or " or their heirs and descendants," are merely substitutionary, as I think they are, they do not control or affect the duration or enjoyment of the gift, but the gift was absolute in the secondary legatees, on the death of the primary legatee.

In *Taylor* v. *Martindale, 12 Sim. 158*, where a testator gave his real and personal estate to his wife, subject, among other bequests, to an annuity of £50 to A. B., forever, it was held that, on A. B.'s death intestate, the annuity passed, not to his heirs, but to his personal representative. And, in *Parsons* v. *Parsons, L. R. (8 Eq.) 260*, above cited, where a testator gave real and personal estate to A., charged with the payment of annuities to the testator's six children, " or their heirs respectively," it was held that the annuities were perpetual and were personal estate, and that the statutory next of kin of one of the six children, who was dead at the date of the will, were entitled to one of the annuities, not-

withstanding the use of the words " or their heirs respectively."

It follows that the absence of the substitutionary words would not affect the right of the personal representative of Susan Shiras to the annuity given to her, but such representative is not entitled to a share of the annuity given to the testator's brother for life.  The restrictive words, " and no others," forbid such claim.  Moreover, the gift to her is merely a gift of a like annuity provided for by the testator, in his will, for his nieces Martha and Ellen—that is, an annuity of $200—and it is made expressly subject to the prior payment out of the income of his estate of their annuities.  He expressly declares that he did not intend to put her annuity on an equal footing with theirs.  It is clear that he did not intend to give her an equal participation with the rest of them in the annuity given to his brother for life.

The gift of the annuity of $1,000, after the death of the testator's sister Joanna, to his three nieces, was intended for Martha Read, Mary P. Shiras and Ellen Shreve, and for them alone.  The language is, " my three nieces named below," and, in the next section, he names his three nieces as his " three nieces," and neither names nor refers to any other persons of that description.  He, indeed, mentions the wives of two of his nephews, but obviously they were not referred to when he spoke of his three nieces.

Mary P. Shiras died, in the testator's life-time, without issue.  The gifts to her, given by the second section of the will, consequently lapsed, and the testator died intestate of the property given to her, for she was never married and had no " descendants."  By descendants is meant those who have issued from an individual, including children, grandchildren and their children to the remotest degree—issue of any degree.  And the legacies given to her by the first and fourth sections also lapsed.  The substitutionary words in the first are the same—" descendants "—and though, in the fourth, they are " heirs and descendants,"

the meaning of the testator was the same; the words "heirs" and "descendants" were used synonymously, and he meant lineal descendants. The provision in the second is, that the property be equally divided. That creates tenancy in common, and there was, therefore, no survivorship.

The residuary clause contains the following provision: "Should there be a surplus fund arising from interest and dividends, it may be distributed among my female annuitants before named." This is equivalent to a gift of the surplus to the persons described, and a direction to pay it to them, and, as there is no direction as to the proportions in which it is to be distributed, "equality is equity." The discretion given to the executors is not in reference to the distribution, but in reference to retaining in their hands income to make good loss of capital.

The surplus of the fund was given absolutely to the female legatees to whom annuities were given by the will, including Joanna and Mary P. Shiras. The share of the latter, however, lapsed, and the testator will be held to have died intestate as to it. Susan Shiras was not entitled to a share. She was not one of the female annuitants "before named," i. e., mentioned in the will, and there is, as before stated in regard to the annuity given primarily to the testator's brother, no evidence in the codicil (under which, alone, she takes her interest in the estate) that the testator intended that she should have full participation with the other female annuitants, but, rather, the contrary—that she should have only the annuity of $200, if the estate proved sufficient to pay it after paying the other annuities; but, if not, then so much of it as the estate would pay after paying them.

The executors appear to have settled their accounts in the prerogative court, and in the orphans court of Burlington county. Their action in settling in another court than this, after the commencement of the suit in this court for account against Alphonso L. Eakin by his executors, was not unauthorized. The final decree in that suit established the

amount of the estate in the hands of Alphonso L. Eakin's personal representatives, and the amount in the hands of his co-executors, and directed that the former pay over to the latter the money in their hands. No equity or directions were reserved, nor any control over the estate retained. The surviving executors, therefore, were at liberty to settle their accounts in the orphans court. But those accounts are, of course, not conclusive here as to the validity of payments to legatees, and this court will do what justice requires in the premises.

There is nothing before me from which I could determine that the executors should be charged with interest on balances in their hands; and, besides, it is to be assumed that all matters properly the subject of charge in the accounts, were passed upon in the orphans court; and, moreover, the bill raises no question on the subject.

There will be a decree establishing the construction of the will and codicils, and distributing the estate accordingly. The costs of the litigation are to be paid out of the estate.